UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| HARRISON CRESS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 20-179-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| ANDREW SAUL, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Harrison Cress appeals the Commissioner of Social Security's denial of his claim for disability insurance benefits. Specifically, Cress contends that the ALJ erred in failing to impose limitations on his ability to interact with others, consistent with the recommendations of state agency consultants whose opinions the ALJ otherwise adopted. Cress also argues that the ALJ did not give sufficient weight to the opinions of his treating physician, Dr. George Chaney.

Upon review of the record and the parties' arguments, the Court finds that the ALJ's decision was based upon substantial evidence and correctly-applied rules of law. Accordingly, the Commissioner's decision will be affirmed.

**I.**

Cress filed the instant application for disability insurance benefits ("DIB") on May 22, 2017, alleging disability beginning on August 20, 2014.[1] [Tr. 464, 492] The claim was denied initially on August 29, 2017, and upon reconsideration on October 31, 2017. [Tr. 387, 392] ALJ Brandie Hall held an administrative hearing on April 4, 2019. [Tr. 283-311] On June 14, 2019, she issued a written opinion denying benefits. [Tr. 265-75] Following Cress's submission of additional evidence, the Appeals Council denied his request for review on June 19, 2020. [Tr. 1-7] Accordingly, this matter is ripe for judicial review. *See* 42 U.S.C. § 405(g).

**II.**

Cress has filed previous applications for disability benefits. ALJ Christopher Sheppard denied his penultimate application on February 2, 2017, concluding that Cress retained the ability to perform light work with certain limitations. [Tr. 321] In rendering the most recent decision, ALJ Hall observed that the record contained "minimal new and material evidence that justifie[d] mildly altering the prior ALJ's findings with respect to the claimant's severe impairments and residual functional capacity." [Tr. 266]

The plaintiff's background and relevant medical history is summarized as follows: Cress was 51 years old at the time of ALJ Hall's decision. He was divorced and lived with his teenage son. He had obtained his GED and attended one year of college. Cress last worked in 2012. He described his previous work as "mine repair," which involved picking up machine

---

[1] Cress listed a "potential onset date" of March 21, 2017, explaining that "[t]his is the protective filing date given in [Appeals Council] decision." He amended the onset date to October 17, 2017, at the administrative hearing.

parts at mine locations and taking them to a repair shop. [Tr. 291] He also has worked as a security guard at a mobile home dealership.

Cress alleged that his ability to work was limited by the following conditions: degenerative disc disease; back pain; nerve pain in legs and feet; sciatica; osteoarthritis; sleep apnea; anxiety; depression; diverticulitis; "thyroid"; and restless leg syndrome. [Tr. 496] He reported that the pain began in 1990 but had gotten much worse to the point he could not do anything without great difficulty. [Tr. 506] Cress reported pain in many areas including his neck, shoulders, wrists, fingers, mid and low back, hips, buttocks, legs, knees, and feet. He acknowledged being able to shop for groceries, visit family members twice a month, and perform household chores including mowing grass. [Tr. 300-01]

George Chaney, M.D., was one of Cress's primary care providers. [Tr. 620-35] Chaney referred him to Giriraj Gupta, M.D., in November 2016 for evaluation of complaints of low back pain. [Tr. 579] Gupta noted that Cress's gait and balance were normal and he was able to perform tandem walking. [Tr. 579] His lumbar flexion was fairly normal but his extension was limited, "with aggravation of pain." However, a neurological examination did not reveal any motor or sensory deficits in the lower extremities. Gupta assessed lumbar spondylosis and recommended aggressive physical therapy. [Tr. 580] If physical therapy failed, the next option would be surgical fusion with decompression at L4-5 and L5-S1.

Dr. Chaney provided a medical source statement on May 22, 2017. [Tr. 620] He listed Cress's diagnoses as lumbar and cervical disc disease, osteoarthritis, and a torn rotator cuff. Chaney indicated his opinions by circling the following answers on a one-page form: Cress could work two hours per day; stand two hours per day; sit two hours per day; lift 20 pounds occasionally; lift 10 pounds frequently; bend occasionally; manipulate with his right and left

hands occasionally; would need to elevate his legs frequently during an eight-hour workday; could occasionally squat, crawl, climb, and reach above shoulder level. He believed Cress would have moderate restrictions from unprotected heights, moving machinery, marked changes in temperature and humidity, and driving automobiles or equipment. Chaney also reported that Cress would likely be absent from work more than 5 days per month due to his conditions.

Chaney referred Cress to the Arthritis & Osteoporosis Center of Kentucky in December 2017. [Tr. 731] Mansoor Ahmed, M.D., evaluated Cress for management of "diffuse polyarthritis and diffuse myalgias and positive ANA." In March 2019, Ahmed noted that there was "no significant clinical evidence of autoimmune disorders." [Tr. 982] Ahmed discussed various pain management methods and acknowledged that chronic pain management was addressed in the pain clinic. Cress received regular treatment at Kentucky Pain Management Services from February 2017 through March 2019. [Tr. 641-63; 765-811; 1068-70] Thomas Karelis, M.D., provided medications and injections for lumbar and sacroiliac pain.

Cress underwent an MRI of both knees on November 5, 2018. [Tr. 725] The left knee scan revealed a tear of the posterior horn of the medial meniscus. The MRI performed regarding Cress' right knee was normal. [Tr. 727] Chaney also referred Cress to Keith Hall, M.D., who advised that arthroscopic surgery was a treatment option for the left meniscal tear. Cress said he would like to have surgery, but later determined that his shoulder was more bothersome than his knee and wanted to have surgery on it instead. [Tr. 1019, 1035] An MRI performed on February 4, 2019, showed a moderate grade partial-thickness tear of the supraspinatus tendon, degenerative changes involving the glenohumeral and acromioclavicular joint, and a "possible tiny tear" through the anterior superior labral complex.

[Tr. 1044] Cress stated that he wanted to proceed with shoulder arthroscopy and possible rotator cuff repair, but there is no indication that the surgery ever occurred. [Tr. 1052]

Cress also saw Ben Back, PA-C at the Primary Care Center East in Vicco, Kentucky, in February 2017 with complaints of his legs jumping around at night. [Tr. 591] Back prescribed Requip and documented that Cress also took gabapentin, Norco, and bupropion. Cress returned to Back in October 2017 complaining of neck, back, and bilateral hand pain. [Tr. 850] Back ordered x-rays of Cress's hands which showed "minor diffuse osteoarthritic changes bilaterally." [Tr. 860] On October 31, 2017, he returned to the clinic to have "paperwork filled out for disability." [Tr. 919] Back indicated he would refer Cress to physical therapy for a functional capacity evaluation. [Tr. 920]

Back referred Cress to James Bean, M.D., for a neurosurgical consultation on December 18, 2017. [Tr. 705] Bean performed straight leg raise testing, which was positive for back pain bilaterally. [Tr. 706] However, Cress's motor function, sensation, and reflexes were all intact. Additionally, there was no "segmental instability," radiculopathy, or myelopathy. [Tr. 707] Dr. Bean assessed "chronic back pain syndrome" and degenerative disc disease at L4-5 and L5-S1. He did not recommend surgery and advised continuing with chronic pain management in an effort to control symptoms of chronic back pain.

Cress attended the Madden Family Practice in October 2017, April 2018, and August 2018, for osteopathic manipulative treatment of his chronic musculoskeletal complaints. [Tr. 870-75] He began physical therapy for low back pain on November 15, 2018. [Tr. 877] Cress attended 11 sessions, concluding on January 14, 2019. [Tr. 903] On February 5, 2019, he went to the Vicco Primary Care clinic complaining of a headache and seeking an Imitrex refill.

Terry Smith, PA-C, diagnosed him with "migraine without aura and without status migrainosus, not intractable." [Tr. 906]

Cress also received monthly mental health counseling from Randall Kloth, LPCC at Kentucky River Community Care during 2017. [Tr. 665-83] Cress reported problems with depressed mood, anxiety, and difficulty concentrating. Kloth noted that Cress was cooperative and alert, understood the consequences of his behavior, had clear and coherent speech and thought, was oriented to place and time, had no evidence of perceptual disturbance, and demonstrated low energy. [Tr. 667] According to Kloth's monthly notes, Drs. Manoj Chandran and Artie Bates managed Cress's psychiatric medications.

Artie Bates, M.D., completed a medical source statement on July 31, 2017. [Tr. 637-40] Bates reported that Cress "sees psychiatrist every [three] months and therapist monthly." She stated that his "signs and symptoms" were "recurrent depression, severe anxiety, [and] poor concentration and attention," for which he was prescribed medication. Bates completed a checklist form indicating that Cress's mental ability to perform most tasks required for work was "poor or none." [Tr. 638] Bates concluded that Cress had marked restriction in activities of daily living and in maintaining social functions. [Tr. 640] Additionally, she noted that he had continual difficulties in concentration and "episodes of deterioration or decompensation in work or work-like settings . . . ." [Tr. 640]

State agency consultant Frances McNeal, Ph.D. reviewed Cress's case on August 29, 2017. [Tr. 356-61] McNeal considered the prior ALJ decision along with new evidence that had been developed since the date of the ALJ's decision. She concluded that Cress's claimed limitations were partially consistent with the evidence and that he retained the basic mental skills to acceptably:

> A: Understand and remember simple instructions and procedures requiring brief initial learning periods, usually 30 days or less.
> B: Sustain attention, concentration, effort and pace for simple tasks requiring little independent judgment and involving minimal variations over 2-hour work segments with normal breaks.
> C: Interact with co-workers and supervisors in an occasional public setting for task completion.
> D: Adapt to situational conditions and normal changes in routine and hazards in the workplace.

[Tr. 360-61] Nick Watters Psy.D., reviewed Cress's case on October 17, 2017, and reached the same conclusions. [Tr. 379-81]

State agency consultant Allen Dawson, M.D., reviewed the case on October 27, 2017. [Tr. 379] After reviewing Cress's updated medical records, he opined that the RFC from February 2017 should be adopted. Because Cress's conditions had not changed significantly, Dawson believed Cress could still perform light work with modifications. [Tr. 378-79]

ALJ Hall determined that Cress had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; obesity; right rotator cuff tear; depressive disorder; anxiety; status post arthroscopic surgery on the left shoulder; and polyarthritis. [Tr. 268] After considering the entire record, she determined that Hall had the functional residual capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), except he could

> operate hand controls with right hand; can only occasionally push and pull up to the exertional limit with his bilateral upper extremities; and can occasionally reach overhead bilaterally but should do no overhead lifting. He can climb ramps and stairs occasionally; and never crawl. He cannot work around vibrations and hazards such as unprotected heights and dangerous, moving machinery; can frequently handle with the right upper extremity; can sit no more than thirty minutes at a time and stand or walk for no more than 30 minutes at a time before changing positions. He is limited to performing simple, routine tasks and making simple work related decisions; can respond appropriately to supervision, coworkers, and work situations; but should have no more than occasional contact with the general public.

[Tr. 270]

The ALJ concluded that Cress could not perform any of his past work. [Tr. 273] However, based on the vocational expert's testimony, there were jobs existing in significant numbers in the national economy that he could perform. [Tr. 274-75] Accordingly, the ALJ determined that Cress was not disabled under the Social Security Act.

### III.

A "disability" under the Social Security Act is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that he suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination regarding disability based on medical evaluations and current work activity, the Commissioner will review the

claimant's RFC and relevant past work to determine whether he can perform his past work. 20 C.F.R. § 404.1520(e). If he can, he is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards in reaching his decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## IV. Discussion

**A. The RFC accounts for restrictions on contact with supervisors and coworkers.**

ALJ Hall found the opinions of Drs. Watters and McNeal persuasive, as they "believed [Cress] had moderate mental limitations," which was consistent with his ongoing mental health treatment records and his performance of activities of daily living. [Tr. 273] Cress contends that the RFC does not account for the restrictions these consultants placed on his ability to

interact with supervisors or coworkers. However, both sources opined that Cress retained the ability to "[i]nteract with co-workers and supervisors in an occasional public setting for task completion." [Tr. 380] The RFC does include this restriction, worded slightly differently, stating that Cress "can respond appropriately to supervision, coworkers, and work situations; but should have no more than occasional contact with the general public." [Tr. 270]

Regardless, "[e]ven where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 276 (6th Cir. July 13, 2015). Notably, the plaintiff does not point to any evidence in the record indicating that his ability to interact with supervisors and coworkers is limited. Cress reported in a self-completed function report that he has had problems with bosses in the past and his ability to get along with authority figures is "not as good as [it] could be." [Tr. 521] He also reported that he was warned he may be sent home from work, but he "told the boss and superintendent if [he] was, [he would] be back," and he felt he could have returned and hurt them." In the end, he was not sent home. [Tr. 521]

While Cress reported isolated incidents of difficulty interacting with supervisors, his medical reports consistently describe him as pleasant and cooperative. Notably, ALJ Sheppard did not include a restriction on interacting with coworkers and supervisors in the February 2, 2017 RFC. [*See* Tr. 321] Cress has not identified any evidence post-dating that decision that indicates his ability to interact with others in a work environment has deteriorated. Accordingly, this argument is without merit.

## B. The ALJ properly evaluated Dr. Chaney's opinion.

Cress contends that the ALJ erred in finding the opinion of his treating provider, Dr. Chaney, unpersuasive. Title 20 of the Code of Federal Regulations, § 404.1520c, sets out the guidelines for considering medical opinions in claims filed after March 27, 2017. The provision provides that the Commissioner "will not defer or give specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from your medical sources." § 404.1520c(a). Instead, the ALJ considers the following factors when considering medical opinions: supportability; consistency; relationship with the claimant; length of the treatment relationship; frequency of examinations; purpose of the treatment relationship; extent of the treatment relationship; examining relationship; specialization; and other factors such as the source's familiarity with other evidence in the claim or an understanding of the disability program's policies and evidentiary requirements. § 404.1520c(c)(1)-(5).

ALJ Hall acknowledged that Chaney was Cress's treating provider, but observed that the extreme limitations he assessed were not consistent with the "mild changes in [Cress's] MRI since the prior decision." [Tr. 273] Importantly, Chaney failed to provide support for *any* of the limitations he assessed and the limitations were not consistent with his treatment of the plaintiff. Supportability and consistency are the most important factors to be considered under § 404.1520c(c), and the ALJ properly articulated her reasoning with respect to how she considered these factors. *See* § 404.1520c(b)(2). Further, the Sixth Circuit has recognized that ALJs do not err by assigning little weight to medical opinions when the physician simply completed a check-box form, provided no explanation for the restrictions assigned, and cited no supporting objective medical evidence. *See Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x

563, 566-67 (6th Cir. 2016); *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474-75 (6th Cir. 2016). That is precisely what Dr. Chaney did in this case and the ALJ did not err by assigning little weight to his opinion.

C. **Substantial evidence supports the Commissioner's decision.**

In discussing the evidence that he believes supports Dr. Chaney's opinion, Cress indirectly argues that the ALJ's decision is not supported by substantial evidence. [Record No. 15, pp. 11-16] He cites treatment notes from Drs. Gupta and Bean concerning his low back pain. While these providers recognized that Cress had degenerative changes in his lumbar spine, their findings were negative for neurological involvement and there is no indication they recommended proceeding with surgical intervention. [Tr. 579-80; 705-07] Cress's citations to records from a pain management clinic and an osteopathic physician further indicate that his conditions were being managed conservatively. Although the record includes references to possible shoulder and knee surgery, it is unclear that Cress went forward with either of these procedures.

Cress underwent additional imaging studies following the 2017 decision denying benefits. As ALJ Hall acknowledged, the results indicate that Cress had experienced some deterioration in the condition of his cervical and lumbar spine since the previous ALJ decision. An MRI of the lumbar spine performed on October 17, 2017, revealed degenerative changes with disc bulging at the L4-L5 and L5-S1 levels.[2] [Tr. 688] There was also a suspected component of epidural lipomatosis. A little over a year later, on December 22, 2018, Cress

---

[2] The MRI report states that there is no prior imaging available for comparison. [Tr. 688]

underwent another MRI of the lumbar spine. [Tr. 710] By the time of the 2018 MRI, Cress's articular facet disease had advanced from mild to moderate.

An MRI of the cervical spine performed in April 2014 revealed mild disc bulges at C3-C4 and C4-C5 indenting on the thecal sac, but with no evidence of spinal canal stenosis. [Tr. 323] An MRI of the cervical spine performed on May 12, 2018, indicated that the degeneration had progressed at the C3-C4 and C4-C5 levels and had minimally progressed at the C6-C7 level.[3] [Tr. 708]

ALJ Hall found the opinion of state consultant Allen Dawson, M.D., somewhat persuasive. After considering Cress's 2017 treatment records, Dawson recommended adopting the prior RFC, which concluded that Cress could perform light work with certain modifications. [Tr. 379] While Hall noted that there was "very little new, material evidence that would warrant a departure from the prior hearing decision," she added the following limitation to the RFC based on the results of Cress's recent imaging studies and his new diagnosis of polyarthritis: "can sit no more than thirty minutes at a time and stand or walk for no more than 30 minutes at a time before changing positions." [Tr. 270-71] This determination is supported by substantial evidence. *See, e.g., Creek v. Berryhill*, 2017 WL 4686036, at *7 (W.D. Ky. Oct. 18, 2017) (ALJ's decision supported by substantial evidence when he reviewed new evidence and concluded it did not materially alter the prior RFC).

Although Cress does not appear to contest it, the Court also notes that the mental component of the RFC is supported by substantial evidence. ALJ Hall found the opinions of

---

[3] Cress underwent additional scans in 2020, the results of which were submitted to the Appeals Council, which denied review. *Elliott v. Apfel*, 28 F. App'x 420 (6th Cir. 2002) (observing that court cannot consider evidence not presented to ALJ when Appeals Council declines to review ALJ's decision).

agency consultants Watters and McNeal persuasive. [Tr. 273] These sources determined that the new evidence concerning Cress's mental health treatment did not change the previous RFC. It is well-established that the opinions of non-examining state agency consultants can constitute substantial evidence, particularly when consistent with other medical evidence in the record. *See Brock v. Astrue*, 2009 WL 1067313, at *6 (E.D. Ky. Apr. 17, 2009).

V.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. Plaintiff Harrison Cress's motion for summary judgment [Record No. 15] is **DENIED**.

2. Defendant Commissioner of Social Security's motion for summary judgment [Record No. 17] is **GRANTED**.

Dated: May 26, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky